## HOWARD *v.* SAVANNAH ELECTRIC COMPANY.

In a suit by a widow to recover damages for the homicide of her husband by a street railroad, the questions of the defendant's negligence, and of the diligence of the plaintiff's husband in avoiding the consequences of the alleged negligence of the defendant by the exercise of ordinary care, and to what extent the deceased contributed to his injury by his neglect, if any, were for the jury.

(a) Where in such a case the petition alleged that immediately preceding the injury the plaintiff's husband looked in the direction from which the car was coming, before attempting to cross the tracks at a regular street crossing, and that at that time the car was far enough away to have enabled him to cross in safety, but that, owing to the high and unlawful rate of speed at which the car was running, it overtook, struck, and injured him, and this allegation was denied by the answer, and neither the petition alleged nor the evidence showed that the deceased ever saw the car or heard the gong before being struck, it was error for the court to direct a verdict for the defendant.

(b) In such a case it was a question for the jury to decide, under the evidence, whether the defendant was negligent, or whether the plaintiff's husband exercised ordinary care in going upon the tracks of the defendant company, or to what extent he contributed to his injury by his neglect, if any.

                    *    August 13, 1913.

Action for damages. Before Judge Charlton. Chatham superior court. April 3, 1912.

Mrs. Belle Strong Howard instituted an action against the Savannah Electric Company to recover damages for the alleged wrongful killing of her husband, Charles M. Howard, by the running of its cars. The petition alleged, in substance, that as Howard was proceeding east on the south side of Bolton street in the City of Savannah, and was proceeding across Whitaker street and across the tracks of the defendant company, which are about the middle of the street, a car of the defendant struck and killed him; that the defendant was negligent in running the car at a high,

dangerous, and unlawful rate of speed, to wit, in excess of ten miles an hour, in violation of the code of the City of Savannah; that there was an electric light at the corner of Whitaker and Bolton streets, which illuminated the streets; and that Howard was in full view of the motorman, had he been looking, while Howard was crossing the tracks, and the motorman could have avoided striking him if the car had been going at a moderate rate of speed and he had had it under control, and if he had been properly experienced, which it was alleged he was not, but was an inexperienced youth. The eighth paragraph of the petition is as follows: "Your petitioner shows that her said husband cautiously crossed said tracks; that he looked in the direction from which the car came, before going on the tracks, and that at that time the car was far enough away to have enabled him to cross in safety, but that owing to the high and unlawful rate of speed at which the car was running it overtook the said Howard just as he was stepping from the eastern rail, and struck his right knee cap, breaking it. The car ran about 150 feet before coming to a stop." It was alleged, that Howard was sixty-two years old, and was in the exercise of ordinary care and caution for his own safety; that he had the right to cross the tracks at a regular street crossing; that at the time he started across, the car was a safe distance away, and he would have crossed in safety had not the car been run at a high and dangerous rate of speed by a boy who was inexperienced; that Howard did not contribute or assent to his injuries; that even if his act in crossing the street amounted to contributory negligence, the defendant was so grossly negligent (and without this negligence deceased would not have been injured) that the plaintiff will not be barred from a recovery, but that her recovery will be diminished under the law applicable to such cases, etc.

The answer denied each and every material allegation contained in the petition, including the eighth paragraph quoted above. After the introduction of evidence had closed, the defendant moved the court to direct a verdict in its favor, on the ground that the allegations of the petition and the evidence thereunder, and particularly the eighth paragraph of the petition, showed as a matter of law that the plaintiff was not entitled to recover, because the deceased did not exercise ordinary care for his own safety, when by the exercise of such care he could have avoided injury to himself. The

court directed a verdict for the defendant, and the plaintiff excepted.

*Twiggs & Gazan,* for plaintiff.

*Osborne & Lawrence,* for defendant.

HILL, J. (After stating the foregoing facts.) The decision in the case of *Thomas* v. *Central Railway Co.*, 121 *Ga.* 38 (48 S. E. 683), is relied upon by the defendant as controlling in this case. This court there held: "One who deliberately goes upon a railroad track in front of an approaching train, thinking that she can cross before the train reaches her, and miscalculating its speed because she is in front of it, can not recover for injuries resulting from being run down by the train, although the company's servants may have been negligent in running at a high rate of speed at that point, and also in failing to check the speed of the train at a public road which crossed the track between the place where the train was when first seen by the plaintiff and the point at which the injury occurred. The above facts being set out in a declaration, a demurrer thereto was properly sustained; for it is clear, from the allegations made, that the plaintiff, by the exercise of ordinary care, could have avoided the injury." That case is distinguishable from the instant one. That case involved a steam railroad on which the rate of speed and the danger is much greater than in the case of a street railroad, where cars stop usually at every street crossing, and the speed is regulated by city ordinance. In the present case, the speed was not to exceed ten miles an hour. The public have the right to the use of the street-car tracks for the purpose of crossing and recrossing, without being regarded as trespassers. At street crossings, owing to the low rate of speed and the light construction and equipment of the cars, the public have the right to expect that they will be under control. The public has never surrendered the entire use of the streets. In the *Thomas* case, supra, the deceased had *deliberately* gone upon the tracks of a steam railroad, knowing of the approach of a train, and, miscalculating its speed and her ability to cross in safety, took the chances and was injured. In such a case, of course there could be no recovery. The deceased in that case was guilty of such contributory negligence as to bar a recovery.

In the present case, the deceased was an old man, 62 years old, and deaf. He was in a public street, attempting to cross. He was

not a trespasser, but had a right to the use of the tracks. It is true that in the petition it is alleged that the plaintiff's husband looked in the direction from which the car was coming, before going on the tracks, and that at the time the car was far enough away to have enabled him to cross in safety, but that owing to the high and unlawful rate of speed at which the car was running it overtook him just as he was stepping from the car track, and struck his right knee-cap, breaking it, from the effects of which he died. But all these allegations were denied by the answer, including, of course, the allegation that the deceased looked in the direction the car was coming. But the petition did not allege, nor did the evidence show, that the deceased ever saw the approaching car before he stepped upon the track where he was struck. Indeed, the evidence of the motorman tended to show that he did not see the deceased until he was within 15 or 20 feet of him, when he sounded the gong, applied the brakes, and endeavored to stop the car, but could not until the deceased was struck. He was in as good position to see the deceased as the deceased was to see the car. The issue as to the speed of the car, the negligence of the defendant's agents, and the diligence of the plaintiff's husband were thus in issue. The evidence for the plaintiff tended to show that immediately before the car struck the deceased the high speed of the car attracted the attention of some of the passengers. The conductor was asked why he was running so fast, and whether that was his last trip. He replied that he had another trip to make. The witness "had hardly gotten the words out of" his mouth when the deceased was hit by the car. The car was going 18 or 20 miles an hour. The car rolled 30 or 40 feet after it struck the deceased. The evidence for the defendant tended to show that the motorman had about two years' experience, and was 22 years old. The car was going not more than 6 or 8 miles an hour, and he based that estimate of the speed of the car on the fact that "we were going to make schedule." The motorman noticed the deceased just as he stepped off the curbstone on the west side of Whitaker street. He was ringing his gong continuously all the way out there. When the deceased stepped off the curbing he was in a position of safety. From the curbing to the western rail is about 7 feet. When the motorman saw the deceased step off the curb he rang the gong especially for him and "halloed" at him. He did not stop, but

walked across the track very rapidly. When the motorman saw that the deceased did not heed the warning, he tried to stop by applying the brakes and reversing the current. The car went 12 feet after striking the deceased. Although the petition alleged that the plaintiff's husband looked in the direction the car was coming, it does not appear from the petition or the evidence that the deceased ever saw the approaching car, or that he heard the gong or shout of the motorman.

Under these circumstances, we can not say, as a matter of law, that the effort of the plaintiff's husband to cross the track ahead of the car at a public crossing in a city was such an act of contributory negligence on his part as to amount to a failure to exercise ordinary care. Whether it was or not, under the circumstances of this case, was a question of fact which should have been left to the jury to determine. It was a question for the jury to decide whether the defendant was or was not negligent in the running of its cars at the time of the injury as alleged in the petition; and it was also a question for them, under the evidence, whether the plaintiff's husband was guilty of such a want of ordinary care or contributory negligence as would bar a recovery. *Lavier* v. *Central R.*, 71 *Ga.* 222 (3) ; *Harrison* v. *Georgia Ry. &c. Co.*, 134 *Ga.* 718, 720 (68 S. E. 505) ; *Western & Atlantic R. Co.* v. *Ferguson*, 113 *Ga.* 708, 713 (39 S. E. 306, 54 L. R. A. 802) ; *Williams* v. *So. Ry. Co.*, 126 *Ga.* 712 (55 S. E. 948) ; *Western & Atlantic R. Co.* v. *York*, 128 *Ga.* 687, (4) 688 (58 S. E. 183). The direction of the verdict for the defendant was error.

> *Judgment reversed. All the Justices concur.*